FILED-CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS 00 OCT 20 AM 8: 16
SHERMAN DIVISION

TEXAS EASTERN

| | |
|---|---|
| PERRY S. NEAL,<br>        Plaintiff, | §<br>§<br>§<br>§<br>§ |
| v. | §   4:99cv189<br>§<br>§ |
| CENDANT OPERATIONS, INC.,<br>        Defendant. | §<br>§<br>§ |

<u>MEMORANDUM OPINION and ORDER</u>

On this day came on for consideration Defendant's Motion for

Summary Judgment.  The Court, having considered the motion, the

response, and the reply, is of the opinion that the Defendant's

motion should be granted.[1]

<u>INTRODUCTION</u>

The Plaintiff, Perry S. Neal (Neal), contends that

Defendant, Cendant Operations, Inc. (Cendant), through its

agents, induced him to leave his job in Missouri to work for it

in Texas by misrepresenting the level of income he would earn in

its employ.

Neal was initially contacted about possible employment with

Cendant by a recruiting firm in December, 1997.  At the time,

Neal was working for a company called Allied Signal in Missouri.

Following up the recruiting firm's efforts, Cendant's Director of

---

[1]  The Court declines to rule on Cendant's Motion to Strike.
Rather, the Court will address Cendant's objections to the
summary judgment evidence as necessary in the present order.

1



Franchise Operations, Michael Jalbert, contacted Neal and spoke more specifically with him about a position as a regional vice-president with Coldwell Banker Real Estate Corporation (Coldwell Banker), a subsidiary of Cendant. According to Neal's affidavit, Jalbert told him that if he accepted a job with Cendant he would "immediately earn between $180,000 and $200,000 per year" and "even in a bad year [his] income would never fall below $160,000 per year." (Neal Aff. ¶ 3.) "Earnings at this level," Neal says he was told, "were *typical* of regional vice presidents at the job that [he] was being recruited to fill (emphasis in original)." (Neal Aff. ¶ 3.)

Neal also asserts that Jalbert discussed options to purchase Cendant stock. Jalbert said "[he] would receive stock options for 5,000 shares of Cendant Corporation stock immediately upon [his] hire date." (Neal Aff. ¶ 3.)

Another Cendant employee, Peter Karpiak, then sent a letter offering Neal a vice-president position with Coldwell Banker. The letter described the terms of employment. Among other things, it stated that Neal was eligible to receive options to purchase 25,000 shares of Cendant stock, "subject to the approval of the Compensation Committee of the Board of Directors of Cendant Corporation." The letter instructed Neal to indicate his acceptance of the offer by signing and returning a copy of the letter, which he did on February, 19, 1998.

On March 6, 1998, Neal began employment with Cendant as a regional vice-president with Coldwell Banker. Neal contends that

2

he never received the stock options and that his commissions did not approach the levels represented by Cendant. A little more than a year later, on March 15, 1999, Cendant fired Neal from his position.

Neal brought this action against Cendant to recover damages based on claims of fraudulent inducement and negligent misrepresentation. Cendant seeks summary judgment on both of these claims. Neal filed a response supported by only his own affidavit and that of another former Cendant employee Guy Ricchi.

## SUMMARY JUDGMENT STANDARD

The granting of summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2554 (1986). The moving party satisfies its burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case."

*Id.*

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment is appropriate. *Celotex*, 106 S. Ct. at 2552-53. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986)(citations omitted).

<u>DISCUSSION</u>

I.  <u>Fraudulent Inducement-</u>

Generally, to prove a claim for fraud under Texas law, the plaintiff must establish that 1) the defendant made a statement constituting a material misrepresentation, 2) the statement was in fact false, 3) the defendant knew the statement was false when made or it made the statement without knowledge of the truth, 4) the defendant intended the statement to be acted upon, 5) the plaintiff in fact relied upon the statement, and 6) the statement caused plaintiff injury. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d

4

670, 688 (Tex. 1990).

A. Opinions and Predictions-

Neal asserts that Cendant made statements as to commissions it was possible to earn as a regional vice-president and that these statements were inaccurate. Neal has failed to provide competent summary judgment evidence that shows that the predictive statements were based on false underlying facts.

As a general rule, opinions and predictions concerning future income cannot as a matter of law form the basis of a fraud claim. *See Maness v. Reese*, 489 S.W.2d 660, 663 (Tex. Civ. App. - Beaumont 1972, writ ref'd n.r.e); *Zar v. Omni Indus.*, 813 F.2d 689, 693 (5th Cir. 1987). The essence of fraud is a misstatement of fact. Earnings based on commissions depend on uncertain and unpredictable events of the future, and thus are not sufficiently factual in nature.

The general rule, however, has exceptions. Opinions and predictions as to future income can form the basis of fraud in three circumstances. *Trenholm v. Ratliff*, 646 S.W.2d 927, 930 (Tex. 1983). An opinion as to the happening of a future event may constitute fraud where the speaker purports to have special knowledge of the facts that will occur or exist in the future. *Id.* (citations omitted). An opinion may constitute fraud if the speaker has knowledge of its falsity. *Id.* (citations omitted). Finally, when an opinion is based on past or present facts, an action for fraud may be maintained. *Id.* (citations omitted).

5

An opinion or prediction based on past or present facts, of course, is actionable only if those facts themselves are false. *See Trenholm*, 646 S.W.2d at 931 (opinion that trailer park would be moved based on incorrect facts that trailer park had been sold and notices had been given to tenants); *Buchanan v. Burnett*, 119 S.W. 1141, 1142 (Tex. 1909)(opinion as to reliability of title based on incorrect fact that defendant had good title).

To demonstrate the false nature of facts underlying an opinion or prediction, a plaintiff must come forward with competent summary judgment evidence. This is to say, he must divulge the grounds for his contentions by pointing out the factual basis for them. Without factual support, "allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law are insufficient to. . . defeat a motion for summary judgment.'" *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)(quoting C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2738 (1983)).

However, the evidence Neal offers to show that Cendant's income estimations were false or based on false information is not competent for summary judgment purposes.[2] Neal asserts that Cendant made representations as to his potential earnings that purported to be based on the past commissions of other vice-presidents. He alleges that he was told that commissions between

---

[2] None of the statements Neal attributes to Cendant are based on special knowledge of a future event, and so this exception merits no discussion.

$180,000 and $200,000 were "typical" and "routine" for vice-
presidents. (Neal Aff. ¶ 3.)  Assuming for the sake of argument
that Cendant made this representation, Neal's belief that it was
misleading lacks specific factual support.

Neal relies on conclusory allegations concerning his own
experience, and the experiences of other Cendant employees,
including his predecessor, to belie Cendant's representations.
Regarding his own experience as a Coldwell Banker vice-president,
Neal explains that he "learned" that results that would produce
$180,000 to $200,000 in commissions "were, as a practical matter,
unobtainable."  (Neal Aff. ¶ 7.)  He found that his own true
income potential was $115,000.  (Neal Aff. ¶ 6.)  Remarkably,
Neal omits from his affidavit the circumstances of his employment
that lead him to conclude that it was impossible to earn a
satisfactory level of commissions.

The evidence he offers of the wages of other vice-presidents
is no more specific than the evidence of his own employment
situation.   Again, Neal offers his conclusion, but not the basis
for it.  Neal states that he "gradually learn[ed] that the
actual, realistic earnings by Vice Presidents of Cendant
Corporation were not as Cendant Corporation and Jalbert promised
[him]."  (Neal Aff. ¶ 6.)  According to "production report
documents" he read, Neal discovered that Jalbert exaggerated the
"typical and average compensation for my position by at least 60
percent."  (Neal Aff. ¶ 14.)  Nowhere in his affidavit does he
indicate the actual earnings of his contemporaries or identify

7

others who were under-compensated.[3]  Neal does not supply the reports on which he based his conclusion, though he had a legal right to obtain the documents from Cendant through discovery. Moreover, Neal's personal knowledge of the income levels of other employees is doubtful.[4]

The evidence of the commissions earned by Neal's predecessor also suffers from a lack of factual support.  Neal observes that "the actual levels of compensation which were received by [his] peers at Cendant Corporation during the years immediately prior to and during [his] employment with Cendant Corporation" demonstrate the "false, knowingly reckless and certainly negligent nature of the promises of compensation made to [him] by Jalbert."  (Neal Aff. ¶ 14.)  Neal's statements concerning his predecessor's compensation, like his other statements, show that he feels that Cendant misled him.  But over-arching assertions, without the support of specific facts, are not the kind of evidence that withstands summary judgment.

B.  Unkept Promise-

Neal asserts that Cendant promised him stock options and

---

[3] The affidavit of Ray Ricchi is of no relevance to Neal's case.  While both Ricchi and Neal held the same title of vice-president, Ricchi was not a vice-president with the Coldwell Banker subsidiary, but with the "ERA brand."  More importantly, Ricchi, an employee who worked for the ERA brand less than a year, does not disclose his total compensation, making it impossible to determine if his commissions fell short of Cendant's representations.  Nor does he assert that the stock options were made available to him on terms other than those promised.

[4] See FED. R. CIV. P. 56 (e).

8

that it failed to deliver them to him.[5]  Cendant responds that
its promise cannot support a fraud claim because he has failed to
present competent evidence showing that Cendant intended to
mislead or deceive him at the time the promise was made.  The
Court agrees with Cendant.

A promise of future performance constitutes an actionable
misrepresentation only if the promise was made with no intention
of performing at the time it was made.  *Formosa Plastics Corp. v.
Presidio Eng'rs and Contractors*, 960 S.W.2d 41, 48 (Tex. 1998).
Otherwise, every breach of contract would be fraud.

The mere failure to perform a contract, standing alone, is
not evidence of fraud.  *Formosa Plastics*, 960 S.W.2d at 48.
However, the failure to perform coupled with slight
circumstantial evidence of fraud is sufficient to show fraudulent
intent in making the agreement.  *Spoljaric v. Percival Tours*, 708
S.W.2d 432, 435 (Tex. 1986).  For example, the denial that a
promise was ever made is a factor in determining fraudulent
intent.  *Spoljaric*, 708 S.W.2d at 435.  Also a factor is the
absence of any  pretense of performance.  *Spoljaric*, 708 S.W.2d

---

[5] Neal suggests that the stock options were the only
elements of his compensation that Cendant guaranteed or promised.
He admits in his deposition and his affidavit that the other
aspects of his compensation were not guaranteed.  (Neal Aff. ¶ 7;
Neal Dep. at 54.)  However, should Cendant's representations
regarding the other components be construed as guarantees, an
analysis similar to the foregoing would suffice to demonstrate no
evidence supports a finding that such promises were made with
fraudulent intent.

at 435.

Though the standard of slight circumstantial evidence of fraud might seem undemanding, a plaintiff must still offer more than a trivial quantity of evidence to satisfy it.  Evidence creating "only a mere surmise or suspicion" of an intention not to perform is insufficient.  *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992).  For instance, the denial of a promise alone is inadequate to change it into a misleading statement.  *See, e.g.*, id.

The evidence of fraud offered by Neal fails to meet this minimum evidentiary requirement.  He insists that Jalbert told him that he would receive stock options on his first day of work.[6]  But no evidence shows that Jalbert, or any other Cendant agent, denied that the stock options were promised to Neal.  The letter, which importantly is not probative of Jalbert's intent since it was written by another Cendant employee, does not constitute a denial of the promise.  The statement in the letter that the options are subject to committee approval is not inconsistent with the promise of stock options.  The committee action might have occurred on or in advance of the day that Neal was to receive the options.  That the letter does not make the committee's approval, and therefore the delivery of the options,

---

[6]  The parol evidence rule does not operate to exclude statements made to fraudulently induce another to enter into a contract.  *Tracy v. Annie's Attic, Inc.*, 840 S.W.2d 527, 532 (Tex. App. - Tyler 1992, writ denied).

contingent upon Neal's work performance supports this reading of the letter. Also, Neal's personal belief that the committee process was a corporate formality is irrelevant to Cendant's intentions.

Nor does the evidence reveal Cendant made no pretense to perform its promise during Neal's year-long tenure with Cendant. To the contrary, Cendant partially performed its promise to Neal by paying him approximately $174,000. (Neal Depo. 11. 10-12 at 125.) *See Turner v. Biscoe*, 171 S.W.2d 118, 119 (Tex. 1943)(finding partial performance of promise negated finding of absence of pretense to perform). If Cendant's representations are parsed as to each element of compensation, the uncontested evidence shows that Cendant tried to deliver the options to Neal. After Cendant failed to deliver the options on the first day of Neal's employment, Jalbert explained to him that Cendant was having "problems with the SEC, the company was doing what it could to remedy the problems and that [Neal] should be patient." (Neal Aff. ¶ 13.) Nothing in the record calls the veracity of Jalbert's explanation into question. Cendant's troubles with the Securities Exchange Commission notwithstanding, that Cendant did not perform over the course of a year is but a thread of evidence that as a matter of both Texas substantive law and federal procedural law cannot support a finding of fraudulent intent.

Neal's termination a year after he started his position with Cendant is not probative of fraudulent intent. Since Neal was employed for an indefinite term, Cendant had the right to

11

terminate Neal at will and without cause. *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723 (Tex. 1990). If it is not fraud to breach a contract, it is not fraud to act in accordance with it.

The remaining evidence available to Neal then is Cendant's failure to perform its alleged promise. The Texas courts have clearly held that the failure to perform a promise is not sufficient evidence of fraudulent intent. Without evidence of fraudulent intent, Cendant's promise to give Neal stock options on the day he started work is not an actionable representation.

## II. Negligent Misrepresentation-

To prove a claim for negligent misrepresentation, the plaintiff must show that: 1) a representation was made by the defendant in the course of business, 2) the defendant supplied false information for the guidance of others in their business, 3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and 4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Neal has failed to come forward with evidence that Cendant supplied him with false information. As previously discussed, Neal provided no competent evidence demonstrating that the facts underlying Cendant's predictions about potential income were false. Nor has Neal provided sufficient evidence to create a fact

issue as to whether Cendant ever intended to perform promises it might have made.

CONCLUSION

Since Plaintiff did not produce competent summary judgment evidence that Defendant estimated his potential earnings based on false underlying facts or made promises to him it never intended to keep, the Motion for Summary Judgment should be granted.


IT IS SO ORDERED.

Signed this _19-th_ day of October, 2000.

_____

UNITED STATES DISTRICT JUDGE